(79 South. 579)

STEWART et al. v. MORRIS.   (7 Div. 921.)

(Supreme Court ·of Alabama.   May 9, 1918.
Rehearing Denied June 20, 1918.)

1. WILLS ⬦⟶616(6) — CONSTRUCTION — .ES-
TATES DEVISED.
Will giving life estate to wife with remain-
der to others, wife to have privilege of changing
remainder interests upon certain conditions,
conferred no absolute power of disposition upon
wife, within Code 1907, §§ 3423–3426; as .to
particular estate being changed to fee by giving
owner an absolute power of disposition.

2. WILLS ⬦⟶616(6) — CONSTRUCTION — Es-
TATES DEVISED.
A will devising to testator's wife property to
be used for her sustenance and comfort during
her life and giving what is left to others, the
wife to have privilege of changing devises to
remaindermen upon happening of certain con-
tingencies, gave her a life estate only, and with
respect to remainders a power to divest and
substitute another or others (not herself) as
beneficiary or beneficiaries upon happening of
contingency specified.

3. WILLS ⬦⟶630(8) — CONSTRUCTION — Es-
TATES DEVISED.
Under will devising to testator's wife prop-
erty to be used for her sustenance and comfort
during her life and giving what is left to others,
the wife to have privilege of changing devises
to remaindermen upon certain contingencies,
devisees of remainder upon death of testator
become vested with remainders in fee, subject to
conditions subsequent that wife should have
privilege of making change.

4. WILLS ⬦⟶104—CONDITION SUBSEQUENT—
VALIDITY—CERTAINTY.
Condition subsequent that wife to whom
was devised a life estate should have right to
divest devisees of remainders in fee, if they
should not "treat her right during her life," was
not void for uncertainty; uncertainty effecting
only ascertainment of existence of conditions
subsequent.

Mayfield, J., dissenting.

Appeal from Circuit Court, Talladega
County; A. H. Alston, Judge.

Bill by Mrs. N. E. Morris against C. J.
Stewart and others. Demurrers to bill over-
ruled, and defendants appeal. Reversed· and
remanded.

Riddle & Riddle, of Talladega, for appel-
lants. Knox, Acker, Dixon & Sims, of Talla-
dega, for appellee.

McCLELLAN, J.  It seems necessary to a
proper understanding of the question of con-
struction considered and decided to repro-
duce the last will and testament of T. R. Mor-
ris, deceased. In view of the allegation of
the bill that Morris left little or no personal
property at his decease, the construction of
his will is taken with reference to its effect
to devolve the title to 114 acres of land
which he owned and occupied as a home-
stead at the time of his death.   The bill
asserts that the testator's widow, Mrs. N. E.
Morris, obtained a fee-simple title to these
lands and had a right to dispose of them
· either by will or conveyance, sale or gift,
if she so desired, and also that, in view of

provisions contained in the third and fourth
paragraphs of the will to be quoted, "she
has changed the manner in which said prop-
erty shall descend or be conveyed, and has
elected to take possession of the said prop-
erty and the fee-simple title to the same
and does hereby so elect," being now in pos-
session of the land, claiming to own the same
in her own right.   Omitting formal parts,
the will reads:

"1st. I will that all of debts and funeral ex-
penses shall be paid by my executors as soon
after my decease as possible.

"2d. I will and bequeath to my beloved wife,
N. E. Morris, all the rest and residue of my es-
tate, real, personal and mixed property, to be
used for her comfort and sustainance during her
lifetime and she has a right to use it as she
sees proper.

"3d. I will and bequeath to George W. Cooley
and his wife, Belle Cooley, the said George
Cooley being the son of Ed. F. Cooley, deceased,
one half of the property that is left at the death
of my wife. My wife hereby has the privilege
of changing the one half interest during her life
if the said George W. Cooley or Belle Cooley
does not treat her right during her life.

"4th. I will and bequeath to C. J. Stewart and
his wife, S. J. Stewart, the remaining one half
of all my property, real, personal, and mixed
at the death of my wife, if she should outlive
me. My wife hereby has the right and privi-
lege of changing the remaining one half as de-
scribed above if the said C. J. Stewart or S. J.
Stewart fails to treat her right during her life.

"5th. This will· and last testament if [is] for
my wife during her lifetime and at her death to
be divided as above stated."

From the terms of the instrument it ap-
pears that the testator's intention is to these
effects: First, that upon the testator's death
there became at once vested in Mrs. N. E.
Morris, testator's widow, a life estate in the
property described in the second paragraph,
the correctness of this conclusion being fur-
ther confirmed by the recitation of the testa-
tor's purpose in the provisions of the fifth
paragraph of the will:   Second, that upon
the testator's death there became at once
vested in the Stewarts, under the fourth
paragraph of the will, the remainder in one-
half of the property of the testator left at
the death of the life tenant; and, third, that
a like vesting in the Cooleys ·of the remain-
der in the other one-half of the property was
effected through the provisions of the third
paragraph of the will.   According to the
manifest,intent of the testator as specifically
expressed in his will, the life estate express-
ly devised to Mrs. N. E. Morris was not in-
tended to be enlarged into an absolute fee.
Denson v. Mitchell, 26 Ala. 360; Weathers v.
Patterson, 30 Ala. 404, wherein the first-cit-
ed deliverance is distinguished from that
made in Flinn v. Davis, 18 Ala. 132.

[1] No absolute power of disposition being
·conferred by this will upon Mrs. Morris (the
life tenant), as was decided to be the case in
Mims v. Davis, 197 Ala. 88, 72 South. 344, the
applicability of which decision to the will un-
der ·review has been read and particularly

⬦⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

202 ALA.—8

considered by the court in consultation and found to be without application to the will of Mr. Morris, the provisions of Code, §§ 3423–3425, are without application (Nabors v. Woolsey, 174 Ala. 289, 56 South. 533); and the absence of any provision conferring a general and beneficial power to devise the land, much less the power to sell and convey, excludes the application of the provisions of section 3426 of the Code. To state this conclusion somewhat more concretely: The will's provisions for the vested remainder estates deny the possibility of an interpretation that would accord Mrs. N. E. Morris the power to make an absolute disposition in any form of the land left by the testator. The only possible argument against these conclusions is sought to be deduced from the language of the second paragraph wherein the testator provided that the property therein described might be used for the comfort and sustenance of his wife during her lifetime, and that she should have a right to use it as she saw proper. It is clear, we think, that these provisions of the will were never intended by the testator to confer on the wife, to whom he gave a life estate only, a power to dispose of the realty to the extinction of the remainders vested, through the third and fourth paragraphs, in the Stewarts and Cooleys. Hovely v. Herrick, 152 Wis. 11, 139 N. W. 384.

[2] The mere fact that reference is made through the use of the term "left" in the third paragraph, and that substantially the same idea is expressed in the fourth paragraph, in defining the subject-matter of the devises in remainder, is not sufficient to overcome the plain provisions of the instrument whereby the wife was given a life estate only, and, with respect to the remainders, a power to divest them and to substitute another or others (not herself) as the beneficiary or beneficiaries of the remainder or remainders, upon a contingency therein specified, later to be considered.

These considerations would necessarily refute the construction of the will set forth in phases of the bill.

[3] The devises to the Cooleys and to the Stewarts operated, as stated, to invest them with remainders in fee. The provisions in the third and fourth paragraphs whereby the power was conferred on the wife of changing these devises during her life, if she was not accorded by these parties, respectively, proper treatment, did not impose a limitation upon the estates devised to the Cooleys and the Stewarts, respectively, but affixed thereto a condition subsequent. Schouler on Wills, §§ 598, 599, et seq., 607. The condition could only have recourse and effect during the life of the testator's widow, and necessarily, after the remainders thus created had become vested. It is to be noted in this connection that there is no devise over of the property in which the remainders were created, and also, that there is in the instrument no residuary devise of the testator's property; and, if the remainders should become entirely extinguished by reason of the happening during the life of the widow of the condition subsequent, the decedent's estate would be left without testamentary direction as to its devolution.

It was the manifest intent of the testator to clothe his wife, the life tenant, with the power to divest the remainders if those in whom he invested such remainders should not "treat her right during her life." The motive inspiring the testator to confer this authority on his wife was, as is evident, to insure, as far as such a provision could, proper treatment of his widow on the part of those named in paragraphs 3 and 4 of his will. The privilege, right and power to determine whether these beneficiaries or any of them accorded the widow the proper treatment during her life was committed to the widow, in whose personal interest it was distinctly created.

[4] It is suggested in the brief that this condition subsequent is void for uncertainty, and that, in consequence, only the condition, not the devise, is defeated. Carter v. Carter, 39 Ala. 579. A remotely related question was presented in Summers v. Summers, 73 South. 401, L. R. A. 1917C, 597,[1] but the point of decision there was that the uncertainty effected the designation of the beneficiaries of the devises; whereas here the uncertainty asserted would affect the ascertainment or determination of the existence of the condition subsequent that would defeat and divest the estate. We see nothing in this condition subsequent to offend public policy in any degree. Our opinion is that the condition subsequent is not void for uncertainty. The power to ascertain and to determine the fact of her proper treatment by the remaindermen is reposed in her irrevisable discretion. If the testator, as he undoubtedly did, saw fit to hinge the survival of these remainders upon the irrevisable discretion and judgment of his widow, to the end that those named should be induced thereby to accord her the treatment she conceived was her due, no reason occurs to this court to deny effect to this thus plainly expressed intent of the testator, and so notwithstanding the result may be to render the decedent intestate, in whole or in part, and to empower his widow to dispose of the remainders through an exercise of her testamentary power to substitute another or others who will take the land in remainder, after the expiration of her life estate.

The court therefore erred in overruling the second ground of the demurrer; and the decree is, on that account only, reversed, and the cause remanded.

Reversed and remanded. All the Justices concur, except MAYFIELD, J., who dissents.

[1] 198 Ala. 30.

MAYFIELD, J. I concur in most that is said in the opinion, but cannot concur in the conclusion. The bill properly invokes the jurisdiction of a court of equity for two purposes: First, to construe the will set out in the bill; and, second, to determine what title the devisees mentioned in the will take. Two of the four respondents confess the equity of the bill, and consent that the court construe the will and determine what title, if any, they have in and to the property devised.

The other two respondents demur, assigning the ground that the bill is without equity, and other special grounds. The trial court overruled the demurrers, and these respondents appeal, and the court reverses the decree of the trial court holding that the demurrers should have been sustained.

To this conclusion I cannot concur. As I understand the opinion, it shows that the bill has equity as to both respondents, that is, as for a construction of the will and to determine title. If I correctly interpret the opinion, it shows that the respondents have no present title or interest in the land devised; the condition subsequent having occurred, which cut off or destroyed any title which they would otherwise have taken. In other words, the opinion shows that respondents have no title or interest, and yet sustains their demurrer to the bill. If they had no title, surely complainant had a right to have that determined. If their title is extinguished by complainant's exercising "the irrevisable discretion reposed in her by the testator. If defendant's title was so cut off, then where did that title go. It had to go somewhere. It could not remain in the clouds; it went into whomsoever the complainant, the life tenant, designated. She designated herself so the bill alleges. If she is given an irrevisable discretion to cut off and determine respondent's title, and to designate to whom it should go, surely she could designate herself as the one to whom it should go. There is nothing in the will to exclude the idea that she should change the remainder from the respondent to herself. The will shows clearly that she was the chief object of the testator's affections, and that the property was to be used for her sole benefit. The result is, to my mind, unavoidable. The language of the will is that complainant, the life tenant, shall have the right and privilege to change the one-half described above. If she has the right to change the one-half interest, that is, to change the beneficiary, if she has the right to say who shall take this half interest, can she not name herself as the beneficiary when the will expressly provided that the property it conveyed was to be used for her comfort and sustenance, and that she had the right to use it as she sees proper, and that she even had the right and privilege "during her life" (not at her death by will) to name the beneficiary of the one-half interest in the remainder devised to respondents? It is a strange construction to hold that the testator intended by this will to provide that anybody in the world could take the remainder devised, on condition subsequent having occurred, except his beloved wife, the chief object of his bounty and affection.

If the opinion and decision stands, the complainant will have to change the beneficiary of the remainder by naming some person or persons other than herself as the beneficiary, and then have the beneficiary convey to her, or she will name them by conveying to them on condition that they convey back to her. The language of the will excludes the idea that she can change the beneficiaries by will only because it provides in terms that she do so during her life. In my judgment the trial court ruled directly in overruling the demurrer to the bill. The opinion shows the bill to contain equity as that the will should be construed, and when construed in connection with the averments that the condition subsequent has happened which defeats the title devised to respondent. It is true the bill says that the will passed the fee to complainant; but only on the condition subsequent that the remaindermen named in the will failed to "treat the life tenant right" and that she thereafter changed the beneficiary by naming herself as the sole remainderman, thereby merging the two estates in her. If the condition subsequent never happened, then complainant took a life estate only. If it did happen, complainant could change the beneficiary or remainderman and as to this she was given an irrevisable discretion. The bill avers that she has exercised the discretion reposed by the will and named herself as the sole beneficiary, thus merging the whole title in her.